804 F.2d 33
 15 Soc.Sec.Rep.Ser. 299, Medicare&Medicaid Gu 35,900
MEDICAL FUND-PHILADELPHIA GERIATRIC CENTER, Appellant,
v.
HECKLER, Margaret M., Secretary of Health and Human Services.
 No. 86-1024.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 21, 1986.
Decided Oct. 24, 1986.
Rehearing Denied Nov. 24, 1986.
 
 Bayard M. Graf (argued), Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for appellant.
 Beverly Dennis, III, Chief Counsel, Region III, James C. Newman, Supervisory Asst., Regional Counsel, James S. Feight, Jr. (argued), Asst. Regional Counsel, Dept. of Health and Human Services, Edward S.G. Dennis, Jr., U.S. Atty., Serena H. Dobson, Asst. U.S. Atty., James G. Sheehan, Chief, Civil Div., Asst. U.S. Atty., E.D.Pa., Philadelphia, Pa., for appellee.
 Before BECKER, MANSMANN, Circuit Judges, and TEITELBAUM, District Judge*.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 The plaintiff, an association of physicians, seeks judicial review of the decision of the Secretary of Health and Human Services ("HHS") to recoup alleged overpayments for medical services provided to Medicare Part B enrollees by members of the plaintiff association. The Secretary asserts that the services were provided in a non-certified nursing facility and thus should have been classified and reimbursed as nursing home services rather than skilled nursing facility visits. The district court dismissed the action for lack of subject matter jurisdiction.
 
 
 2
 We agree with the district court that the facts alleged by the plaintiff do not provide jurisdiction under 42 U.S.C. Sec. 1395ff(b)(1)(B) or under 42 U.S.C. Sec. 405(g). However, in light of the recent decision of the Supreme Court in Bowen v. Michigan Academy of Family Physicians, --- U.S. ----, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), we will reverse the decision and remand to permit the plaintiff to amend its complaint to allege jurisdiction under 28 U.S.C. Sec. 1331.
 
 I.
 
 3
 The Medicare Program, 42 U.S.C. Sec. 1395 et seq. consists of Part A, which provides for hospital insurance, 42 U.S.C. Sec. 1395c-1395i-2, and Part B, which provides coverage for supplemental medical services, 42 U.S.C. Sec. 1395j-w. Part A benefits are funded by a wage tax and are generally available to all persons who are over the age of 64 or are disabled. Participation in Part B is elective, and benefit payments are funded by enrollees' premiums as well as by federal government appropriations. Individuals enrolled under Part B may request direct reimbursement for medical services or may assign the right to reimbursement to the physician.
 
 
 4
 Part B is administered by private intermediaries called "carriers" who are authorized to set rates, review claims and make payments on behalf of HEW. 42 U.S.C. Sec. 1395u. Medicare Part B patients or their assignees are paid on the basis of the amounts charged, subject to the carrier's responsibility to establish appropriate "reasonable amounts". 42 U.S.C. Sec. 1395x(v); 42 C.F.R. Sec. 403.501 et seq. By accepting assignment a physician agrees to charge a patient no more than the reasonable charge determined by the carrier.
 
 II.
 
 5
 The members of the plaintiff association, physicians on staff at the Philadelphia Geriatric Center, rendered medical services to a number of Medicare Part B beneficiaries who assigned their claims to the plaintiff. During the period from October 1, 1980 to September 30, 1982 the plaintiff submitted to the carrier, Blue Shield of Pennsylvania, the assigned claims of fifteen Part B enrollees. The plaintiff was reimbursed at the rate for services performed in a skilled nursing facility. A later audit by the Health Care Financing Administration ("HCFA") revealed that the Philadelphia Geriatric Center had not been a Medicare-certified skilled nursing facility during the period from October 1, 1980 to September 30, 1982.
 
 
 6
 On instruction of the HCFA the carrier reopened the plaintiff's claims for the period in question and conducted a post-payment review. The carrier determined that because the physician's services had not been rendered in a Medicare-certified skilled nursing facility, the services should have been reimbursed at the lower rate applicable to services performed in a nursing home. The carrier notified the plaintiff that it had been overpaid in the amount of $86,128 and requested repayment.[1]
 
 
 7
 When a carrier determines that full reimbursement is not warranted, statute and regulations designate an agency appeal procedure culminating in a "fair hearing" before a hearing officer designated by the carrier. See 42 U.S.C. Sec. 1395u(b)(3)(C); 42 C.F.R. Sec. 405.820 (1980). The plaintiff was given a Medicare fair hearing on April 2, 1985. Relying on an explicit HFCA policy, the hearing officer determined that the medical services provided to the Medicare patients by the members of the plaintiff association had been properly classified by the carrier as nursing home visits. A request for reconsideration was denied.
 
 
 8
 The plaintiff filed this suit on August 16, 1985 seeking judicial review of the hearing officer's decision. The plaintiff alleges and the defendant admits that the sole basis for the retroactive reduction in the amount of benefits payable to the plaintiff was the determination that the professional services were not rendered in a skilled nursing facility certified by Medicare. Both parties also agree that the services provided by Medical Fund were equivalent to those provided in a skilled nursing facility.
 
 
 9
 The plaintiff does not assert that the services were rendered in a Medicare-certified facility. It argues instead that the services were rendered in a facility which is certified by Medicaid as a skilled nursing facility and therefore should have been treated as certified for Medicare as well because the statutory requirements are the same. The district court found that it lacked subject matter jurisdiction to consider the issue and dismissed the action.
 
 III.
 
 10
 The dismissal of a complaint for lack of jurisdiction by the district court raises a question of law subject to plenary review. See Universal Minerals, Inc. v. C.A. Hughes and Co., 669 F.2d 98 (3d Cir.1981).
 
 
 11
 In dismissing the action the district court relied on United States v. Erika, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). The Supreme Court noted in Erika that 42 U.S.C. Sec. 1395ff provides jurisdictional grants for judicial review of disputes relating to eligibility to participate in either Part A or Part B, and for judicial review of disputes concerning the amount of benefits to which an individual is entitled under Part A.[2] Erika, 456 U.S. at 207, 102 S.Ct. at 1653. The Court held that by omitting a provision for judicial review of determinations of the amount of Part B awards, Congress intentionally foreclosed review of those determinations. Id. at 208, 102 S.Ct. at 1654.
 
 
 12
 In its motion to dismiss, the defendant asserted that the dispute before the hearing officer concerned only the amount of Part B benefits due the plaintiff under the assignment and that district court review was therefore precluded under Erika. The plaintiff on the other hand attempted to bring the decision within the review provisions of 42 U.S.C. Sec. 1395ff(b)(1)(B) by characterizing the dispute as one regarding entitlement, i.e., the eligibility of the plaintiff's assignors to receive Part B benefits in an amount allowable for services performed in a certified skilled nursing facility.
 
 
 13
 Section 1395ff as originally enacted allowed judicial review of determinations as to "entitlement" under part A or part B, or as to "amount of benefits under part A." 42 U.S.C. Sec. 1395ff. In order to obviate the problems experienced by courts in distinguishing between questions of "entitlement" and questions of "amount," the statute was amended in October, 1972. See generally Bohlen v. Weinberger, 483 F.2d 918, 921 (3d Cir.1973). Under the current version, relied upon by the plaintiff, the only reviewable questions of entitlement to part B benefits are those involving the Secretary's determination after a hearing as to whether an individual "is eligible to enroll and has enrolled" in the Part B program.
 
 
 14
 As the district court correctly concluded, this is not the question presented here. No one has disputed that plaintiff's assignors are properly enrolled. The overall question presented is simply which of two amounts is to be deemed reasonable reimbursement for the services performed by the members of the plaintiff Medical Fund. Judicial review is not available under Sec. 1395ff(b)(1)(B). An attempt to recast the question as one of "entitlement" to an amount rather than simply one of reasonableness of an amount will not bring a Part B amount determination within the review provisions of Sec. 1395.
 
 
 15
 The plaintiffs also alleged jurisdiction under 42 U.S.C. Sec. 405(g).[3] Section 405(g) is the jurisdictional statute for review of the Secretary's decisions under subchapter II of the Social Security Act. While Sec. 1395ii makes certain subsections of Sec. 405 fully applicable to subchapter XVIII, subsection (g) is not among those listed. Therefore it is not an independent source of jurisdiction to review decisions under subchapter XVIII, the Medicare Act, but applies only as incorporated by 1395ff to delineate prerequisites and procedures for judicial review in the specific instances authorized by 1395. See 42 U.S.C. 1395ii. Since 1395 does not provide for jurisdiction here, 405(g) is unavailing as well.
 
 IV.
 
 16
 The plaintiff's complaint also asserts, however, that there is only one set of statutory requirements for certification as a "skilled nursing facility" whether it be for Medicare or for Medicaid purposes. The plaintiff further asserts that "[t]o require the place of service of plaintiff's professional services as a condition of payment, to be performed in a Medicare-certified facility, which, in fact, is already Medicaid-certified, is agency rule making in excess of statutory authority." These assertions amount to a claim that the agency policy of reimbursing Medicare services at a Medicaid-certified facility such as the Philadelphia Geriatric Center at a lower rate than that applicable if it were also Medicare-certified is contrary to law.
 
 
 17
 The district court did not specifically address that claim as a basis for jurisdiction. Section 1395ff makes no provision for administrative or judicial review of the legality of the regulations and policies which a hearing officer must apply in determining a reasonable amount of reimbursement on a Part B claim. Although the plaintiff did not allege jurisdiction under the general jurisdictional statutes, the Secretary argued in the district court that under the Supreme Court's decision in Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), judicial review of Medicare cases is precluded except to the extent that it is expressly authorized under the Social Security Act. The district court also cited Ringer in support of its decision.
 
 
 18
 In Ringer, the plaintiffs were claimants for Part A benefits who had not met the exhaustion requirements of Sec. 405(g) prior to requesting judicial review. The Supreme Court declined to accept general review jurisdiction while arguably holding that the jurisdictional provisions of the Medicare Act itself are, to the exclusion of 28 U.S.C. Sec. 1331, the sole avenue for judicial review of claims "arising under" the Medicare Act. Ringer at 615, 104 S.Ct. at 2022.
 
 
 19
 The plaintiff now asserts on appeal that jurisdiction is proper under the holding in Bowen v. Michigan Academy of Family Physicians, --- U.S. ----, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), a case decided by the Supreme Court after the district court rendered its decision in this case. In Michigan Academy the Supreme Court severely restricted the decision in Ringer by upholding a finding of jurisdiction under 28 U.S.C. Sec. 1331 in a suit filed to challenge the validity of a regulation authorizing payment of Medicare Part B benefits in different amounts for similar physicians' services. The Supreme Court rejected the Secretary's argument that Congress had forbidden judicial review of all questions affecting the amount of benefits payable under Part B of the Medicare program, --- U.S. at ----, 106 S.Ct. at 2137, and held that Congress' intent was to foreclose review only of amount determinations remitted finally and exclusively to adjudication by private insurance carriers in a fair hearing. Id. at ----, 106 S.Ct. at 2141. Thus to the extent the plaintiff's claims involve matters not within the statutory jurisdiction of the hearing officer, review jurisdiction may be available under Sec. 1331.
 
 
 20
 It is within the exclusive jurisdiction of the hearing officer to decide claims when requests for payments under Part B "are denied or are not acted upon with reasonable promptness or when the amount of such payment is in controversy." 42 U.S.C. Sec. 1395u(b)(3)(C); U.S. v. Erika. However, by regulation, the hearing officer "is to comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as with policy statements, instructions, and other guides issued by the Health Care Financing Administration (HCFA) in accordance with the Secretary's agreement with the carriers." 42 CFR Sec. 405.8670. The hearing officer may not interpret the statute differently than does the HCFA nor may he comment upon the legality of the Act or regulations issued thereunder. See Medicare Carrier's Manual Sec. 12016 (1985).
 
 
 21
 The allegations in this case seem to cover a substantial portion of the continuum between Erika and Michigan Academy. On the Erika side, the plaintiff alleges: "The facility, or place of service, where the professional serves were in fact rendered by plaintiff was, in fact, a 'skilled nursing facility,' within the meaning of Sec. 1861(j) of the Social Security Act, and met all other requirements prescribed by the defendant." If the plaintiff means by this allegation that the HFCA erroneously applied its own policy, this allegation would appear to be within the jurisdiction of the hearing officer and precluded from judicial review. On the Michigan Academy side, plaintiff alleges: "To require the place of service of plaintiff's professional services as a condition of payment, to be performed in a Medicare certified facility, which, in fact, is already Medicaid certified, is agency rulemaking in excess of statutory authority." This allegation, which either challenges an explicit HFCA policy in the Medicare Carrier's Manual or challenges its lawfulness as applied to situations like this one, lies outside the jurisdiction of the hearing officer, for it is not within the authority of the hearing officer even to comment upon the legality of policies established by the Secretary or the HCFA. Michigan Academy, --- U.S. at ----, 106 S.Ct. at 2139 n. 6. Accordingly, this allegation is not precluded from judicial review by Sec. 1395ff even though the resolution of the issue would affect the amount of payment of some part B claims. Between these two allegations lie a number of others whose legal bases are not adequately described as within the jurisdiction of the hearing officer.[4] If challenged, the district court must examine its jurisdiction over each claim on remand (see infra ), as its jurisdiction depends on whether the claim lay outside the jurisdiction of the hearing officer.
 
 
 22
 There is no explicit provision in the Medicare Act for review of regulations and policies promulgated thereunder. However, Michigan Academy reemphasized "the strong presumption that Congress intends judicial review of administrative action." --- U.S. at ----, 106 S.Ct. at 2135, citing Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). That presumption is even stronger for Medicare claims that lack an administrative forum, for it is implausible to think that Congress provided no forum to adjudicate statutory and constitutional challenges to the Secretary's policies although it provided review by Medicare carriers of claims over amounts Congress characterized as "trivial." Michigan Academy, --- U.S. at ----, 106 S.Ct. at 2140. Accordingly, the mere fact that Sec. 405(g) review is made available by Sec. 1395ff over some acts will not alone support an inference that others are excluded from review. Id. at 2138.
 
 V.
 
 23
 The district court was correct in finding an absence of review jurisdiction under Sec. 405(g) or under Sec. 1395ff, the statutes relied upon by the plaintiff. In light of Michigan Academy, however, Ringer can no longer be interpreted to exclude Medicare claims from jurisdiction under 28 U.S.C. Sec. 1331 if those claims lie outside the jurisdiction of carrier hearing officers. Because we find the plaintiff's pre-Michigan Academy failure to assert jurisdiction under Sec. 1331 reasonable, we will reverse the decision of the district court and will remand the case with instructions that the plaintiff be permitted to amend its complaint to allege jurisdiction under Sec. 1331. See 28 U.S.C. Sec. 1653. If after remand there is a jurisdictional challenge, the district court should consider exactly which of the plaintiff's allegations come properly before it and make its rulings on jurisdiction in light of this opinion.
 
 
 
 *
 Honorable Hubert I. Teitelbaum of the United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The plaintiff further asserts that the carrier offset overpayment against later claims of the plaintiff, a fact denied by the defendant. Since the issue is not relevant to the jurisdictional question, we do not address it
 
 
 [2]
 42 U.S.C. Section 1395ff provides as follows:
 Sec. 1395ff. Determinations of Secretary
 (a) Entitlement to and amount of benefits
 The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A of this subchapter, shall be made by the Secretary in accordance with regulations prescribed by him.
 (b) Appeal by individuals
 (1) Any individual dissatisfied with any determination under subsection (a) of this section as to--
 (A) whether he meets the conditions of section 426 of this title, or
 (B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter or section 1395i-2 of this title, or
 (C) the amount of benefits under part A of this subchapter (including a determination where such amount is determined to be zero) shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
 (2) Notwithstanding the provisions of subparagraph (c) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000.
 (c) Appeal by institutions or agencies
 Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services, or with any determination described in section 1395cc(b)(2) of this title, shall be entitled to a hearing thereon by the Secretary (after reasonable notice and opportunity for hearing) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
 (Aug. 14, 1935, c. 531, Title XVIII, Sec. 1869, as added July 30, 1965, Pub.L. 89-97, Title I, Sec. 102(a), 79 Stat. 330, and amended Oct. 30, 1972, Pub.L. 92-603, Title II, Sec. 2990(a), 86 Stat. 1464.)
 
 
 [3]
 Section 405(g) provides in pertinent part:
 (g) Judicial review
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow....
 
 
 [4]
 The plaintiff sets out its claims in paragraph 11, subparagraphs A-H. Subparagraph E illustrates the problem with many of these claims. It states: "Defendant is violating her so-called rule of waiver of liability for retroactive denial where this plaintiff provider acted in good faith, on the basis of existing information, and published guidelines." On the basis of this record, we cannot determine whether the plaintiff claims that the hearing officer applied the wrong policy to this case or whether the plaintiff claims that the policy applied was itself contrary to law, at least in this case, because it conflicted with another established policy