**MOBILE MEDICAL SERVICES, INC., Plaintiff,**

v.

**ARKANSAS BLUE CROSS AND BLUE SHIELD, Defendant.**

**Civ. No. 87–2017.**

United States District Court, W.D. Arkansas, Fort Smith Division.

Dec. 11, 1987.

Lonnie Turner, Ozark, Ark., for plaintiff.

Gayla Fuller and Charlene M. Seifert, Dept. of Health & Human Services, Dallas, Tex., Mark Webb, Asst. U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

Between January, 1984, and April, 1986, Mobile Medical Services, Inc., provided on-site X-rays[1] to certain nursing home patients throughout Arkansas. Mobile Medical then billed Arkansas Blue Cross and Blue Shield, the state Medicare carrier, for those X-rays, and Blue Cross paid the bills. Subsequently, Blue Cross reviewed those bills in more detail and determined that the X-rays in question were not covered under Medicare. Blue Cross then asked for repayment of $88,361.61 from Mobile Medical.

Mobile Medical requested a carrier hearing on the issue, and a hearing was held before a Blue Cross hearing officer in Sep-

tember, 1986. In December, 1986, the hearing officer issued a decision finding that the X-rays were not covered by Medicare and determining that the request for repayment by Blue Cross was correct.

In January, 1987, Mobile Medical sued in state court to enjoin Blue Cross from trying to collect the repayment. Blue Cross[2] removed the case to this court and counterclaimed for the repayment.

Blue Cross then moved for summary judgment, contending that under the statute in effect at the time the X-rays were taken, the hearing officer's decision was not reviewable. The court denied the motion as having been made too close to the trial date but reserved the point of law for further consideration after a bench trial. At trial, Blue Cross moved for a directed verdict, and the court took that motion under advisement. The motion will now be granted and the complaint dismissed for lack of jurisdiction.

### I.

The Medicare program has two parts. Part A covers medical care and services given by hospitals, hospice facilities, and home health agencies. *See* 42 U.S.C. §§ 1395c through 1395i–2. Part B covers medical care and services given by physicians and services furnished by others as part of outpatient care. *See* 42 U.S.C. §§ 1395j through 1395w. The X-rays at issue, if covered at all by Medicare, would fall under Part B of the Medicare program.

■ The Medicare statute specifies the Secretary of Health and Human Services[3] as the person who has the power to determine eligibility for enrollment and the amount of benefits to be paid to any individual. *See* 42 U.S.C. § 1395ff(a). At the

---

1. This service is called providing portable X-ray services, because the X-ray machine itself is brought to the patient instead of the other way around.

2. Since Blue Cross is merely the Medicare carrier for the federal government and the Department of Health and Human Services is the true party in interest, a U.S. Attorney is actually representing Blue Cross.

3. The Secretary has delegated the administration of the Medicare program to the Health Care Financing Administration, an agency within the Department of Health and Human Services. The Health Care Financing Administration in turn has delegated the administration of Part B of the Medicare program to Arkansas Blue Cross and Blue Shield, the state Medicare carrier. *See* 42 U.S.C. § 1395u(a).

time the X-rays were made,[4] the only provision for formal administrative and judicial review of decisions as to Medicare coverage stated that such review was available as to decisions about an individual's eligibility to enroll in either Part A or Part B of the Medicare program and as to decisions about the amount of benefits under Part A to which an individual is entitled. *See* previous 42 U.S.C. § 1395ff(b). The only other language concerning review of decisions relating to Medicare coverage appears in the section listing the requirements imposed on Medicare carriers as part of their administration of Part B of the program. That section specifies that a carrier must establish procedures for a "fair hearing by the carrier" in disputes where requests for payment are denied or are not acted on promptly. *See* 42 U.S.C. § 1395u(b)(3)(C).

The Supreme Court has held that because of "the statute's precisely drawn provisions," *United States v. Erika, Inc.*, 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed. 2d 12 (1982), the statute specifically precludes formal administrative and judicial review of "adverse [carrier] hearing officer determinations of the amount of Part B payments." *Id.* at 206, 102 S.Ct. at 1653. However, as the Court made clear in a later case, a challenge to "the *method* by which such amounts are determined," in contrast to a challenge to the amounts actually determined to be proper or improper, is not precluded. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 675, 106 S.Ct. 2133, 2138, 90 L.Ed.2d 623 (1986) (emphasis in original). In other words, the Court said, the statute allows formal administrative and judicial consideration of "statutory and constitutional challenges to regulations promulgated by the Secretary."[5] *Id.* at 678, 106 S.Ct. at 2140. The question for this court, then, is how to characterize the challenge presented by Mobile Medical.

▮ Medicare payments are authorized only for items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury." *See* 42 U.S.C. § 1395y(a)(1)(A); *see also* 42 C.F.R. § 405.310(k)(1). Medicare payments are not authorized for "routine physical checkups." *See* 42 U.S.C. § 1395y(a)(7); *see also* 42 C.F.R. § 405.310(a). The regulations relating to administration of Part B of the Medicare program state that diagnostic portable X-ray tests are included in the services authorized for Medicare payments, *see* 42 C.F.R. § 405.231(d), as long as they are furnished under the general supervision of a physician. *See* 42 C.F.R. § 405.232(b)(2)(ii). The regulations also state that the Medicare carrier is to make "an initial determination with respect to an applicant's claim for benefits under Part B." *See* 42 C.F.R. § 405.803(a). The initial determination includes "a determination as to whether items and services furnished are covered." *See* 42 C.F.R. § 405.803(b). It is review of that initial determination that is provided by the carrier hearing officer. *See* 42 U.S.C. § 1395u(b)(3)(C) and 42 C.F.R. § 405.820.

The essence of Mobile Medical's argument is that in determining that the portable X-rays at issue were not covered, both Blue Cross and its hearing officer improperly classified those X-rays as "routine screening procedures" required by the state health department, which are excluded from coverage under guidelines provided to carriers by the Medicare Carrier's Manual.[6] *See also* 42 C.F.R. § 405.310(a). Mobile Medical argues that its challenge is not to the amount Blue Cross would pay for these X-rays if they were covered by Medicare but instead to the method by which Blue Cross determined that the X-

---

**4.** The provisions for formal administrative and judicial review were amended in 1986. However, the amendments apply only to services provided after January 1, 1987. *See* Omnibus Budget Reconciliation Act of 1986, Pub.L. 99–509, § 9341(b), 1986 *U.S. Code Cong. and Admin. News* (100 Stat.) 1874, 2038.

**5.** The Medicare statute gives the Secretary the power to make regulations relating to administration of the Medicare program. *See* 42 U.S.C. § 1395hh.

**6.** Section 2070.4 of the manual is apparently the guideline in question. The court was not provided with a copy of this manual or of this guideline.

rays were not covered, *i.e.*, the evaluation of the purpose for which the X-rays were used. The court cannot agree that this is the "method" of determining amounts payable that the Supreme Court had in mind when it declared that formal administrative and judicial review was available for certain Part B questions. *See Michigan Academy*, 476 U.S. 667, 675, 106 S.Ct. 2133, 2138, 90 L.Ed.2d 623 (1986).

The challenge in *Michigan Academy* was to a regulation allowing the payment of benefits in different amounts for similar physicians' services, the amount of payment being controlled by whether or not a physician was board-certified. *Id.*, at 668–669, 106 S.Ct. at 2135. Several doctors alleged that the regulation was in violation of provisions of the Medicare statute and of the due process and equal protection clauses of the Constitution. *Id.; see also Michigan Academy of Family Physicians v. Blue Cross and Blue Shield of Michigan*, 757 F.2d 91, 92 n. 1 (6th Cir.1985) (the case that was appealed to the Supreme Court). An analogous challenge in the present case would be to the statutory provisions and regulations allowing Medicare coverage for reasonable and necessary services used to diagnose or treat an injury but denying coverage for routine physical checkups or routine screening procedures. *See* 42 U.S. C. § 1395y(a)(1)(A), 42 C.F.R. § 405.310(k)(1), 42 U.S.C. § 1395y(a)(7), and 42 C.F.R. § 405.310(a). Another analogous challenge would be to the regulation defining an "initial determination" as including the determination of whether certain services are covered. *See* 42 C.F.R. § 405.803(b).

What Mobile Medical is challenging is not the validity of a statutory provision or a regulation but instead the finding made by Blue Cross and the hearing officer after the exercise of the discretion given to each by the Secretary and the Health Care Financing Administration. That delegation of discretion, however, at least as to the hearing officer, has been upheld as not violative of the due process clause. *Schweiker v. McClure*, 456 U.S. 188, 200, 102 S.Ct. 1665, 1672, 72 L.Ed.2d 1 (1982).

Mobile Medical has not cited any constitutional or statutory provisions allegedly violated by the exercise of the discretion given to Blue Cross and the hearing officer. Nor, in fact, has Mobile Medical cited any regulation either violated by the exercise of that discretion or itself violative of the Constitution or any statute. The court does not believe, then, that Mobile Medical's claim is reviewable by this court. The complaint will, therefore, be dismissed for lack of jurisdiction.

II.

There appearing to be no obstacle to granting judgment on the government's counterclaim, the court will enter judgment against plaintiff in the amount of $88,-361.61.