AMERICAN AMBULANCE SERVICE
OF PENNSYLVANIA, INC.

v.

Louis W. SULLIVAN, M.D., et al.

Civ. A. No. 87–7746.

United States District Court,
E.D. Pennsylvania.

June 30, 1989.

Stirling Lathrop, Philadelphia, Pa., for plaintiff.

Linda L. Shafer, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, Judge.

Plaintiff American Ambulance Service of Pennsylvania, Inc. ("AASP") seeks judicial review of the administrative determination by Medical Service Association of Pennsylvania ("Blue Shield"), acting as agent for the Secretary of Health and Human Services ("Secretary"), that AASP was not entitled to reimbursement for ambulance transportation provided to certain beneficiaries under Part B of Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* ("Medicare Program"). The matter is before this Court on cross motions for summary judgment based upon a Joint Stipulated Record.

### I. *Federal Legislation*

The Medicare Program, which is set forth in Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc, consists of two parts. Part A, which is not at issue in this case, provides hospital insurance benefits to the elderly and disabled. 42 U.S.C. §§ 1395c–1395i–2. Part B is a federally subsidized, voluntary insurance program that pays a portion (typically 80%) of the cost of certain medical and other health services not covered by the Part A program. 42 U.S.C. §§ 1395j–1395w. The term "medical and other health services" is defined as including, *inter alia*, "ambulance services where use of other methods of transportation is contraindicated by the individual's condition, but only to the extent provided in regulations." 42 U.S.C. § 1395x(s)(7). 42 C.F.R. § 405.232(i)(2) provides that "Medicare Part B pays for transportation by ambulance only if other means of transportation would endanger the beneficiary's health."

Only persons 65 or older or disabled may enroll in Part B, and eligibility does not depend on financial need. The Part B program is:

> [F]inanced by the Federal Supplementary Medical Insurance Trust Fund. This Trust Fund in turn is funded by appropriations from the Treasury, together with monthly premiums paid by the individuals who choose voluntarily to enroll in the Part B program. Part B consequently resembles a private medical insurance program that is subsidized in major part by the Federal Government.

*Schweiker v. McClure,* 456 U.S. 188, 190, 102 S.Ct. 1665, 1667, 72 L.Ed.2d 1 (1982). Individuals enrolled under Part B may request direct reimbursement for medical services or may assign the right to reimbursement to the medical provider.

In order to "provide for the administration of the benefits ... with maximum efficiency and convenience for individuals entitled to benefits," the Secretary is authorized to delegate to private insurance carriers experienced in such matters, the task of paying Part B claims from the Trust Fund. 42 U.S.C. § 1395u; *see* H.R.Rep. No. 213, 89th Cong., 1st Sess., 46 (1965), 1965 U.S. Code Cong. & Admin.News p. 1943. Such insurance carriers are authorized to set rates, review claims and make payments on behalf of the Secretary. 42 U.S.C. § 1395u. After Part B enrolles receive medical care, they (or, after assignment, their medical providers) bill the private insurance carrier. Medicare Part B patients or their assignees are paid on the basis of the amounts charged, subject to the insurance carrier's responsibility to establish "reasonable amounts." 42 U.S.C. § 1395x(v); 42 C.F.R. § 403.501 *et seq.* By accepting assignment the medical provider agrees to charge a patient no more than

the reasonable charge determined by the carrier.

The Secretary pays the participating carriers' costs of claims administration. 42 U.S.C. § 1395u(c). In return, the carriers act as the Secretary's agents. 42 C.F.R. § 421.5(b) (1980). As is the case with private medical insurance programs, the Part B program and its implementing regulations set forth a number of conditions and limitations on the coverage of medical and other health services, 42 U.S.C. §§ 1395k, 1395l, 1395x(s), and excludes certain items and services from coverage. 42 U.S.C. § 1395y. Accordingly, once the carrier has been billed for a particular service, it determines if the service was medically necessary, whether the charge was reasonable, and whether the claim was otherwise covered by Part B. 42 U.S.C. § 1395y(a). If the carrier determines that the claim meets all these criteria, the carrier pays the claim out of the Government Trust Fund. 42 U.S.C. §§ 1395u(a)(1), 1395u(b)(3), 1395u(c); *see also Schweiker v. McClure*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). The carrier is authorized to conduct periodic post payment surveys and audits of the supplier's records. *See generally United States v. Sanet*, 666 F.2d 1370, 1372 (11th Cir.1982).

If, however, the carrier refuses on behalf of the Secretary to pay all or part of a claim, the claimant is entitled, first, to a "review determination" in which a carrier employee, other than the initial decision maker, reviews the written record *de novo*, and either affirms or adjusts the original determination. 42 C.F.R. §§ 405.803–405.806. If the amount in controversy is at least $100.00, a claimant who is dissatisfied with the review determination may request an oral, evidentiary hearing. 42 U.S.C. § 1395u(b)(3)(C). The hearing officer is appointed by the carrier and may be an employee of the carrier, but he may not hear "any case in which he is prejudiced or partial with respect to any party, or if he has any interest in the matter before him."

42 C.F.R. § 405.824. The hearing officer is required to follow all statutory and regulatory provisions as well as "policy statements, instructions and other guides" issued by the Secretary. 42 C.F.R. § 405.860. Hearing officers receive evidence and hear arguments pertinent to the matters at issue. 42 C.F.R. § 405.830. As soon as practicable thereafter, the hearing officer must render a written decision based on the record. 42 C.F.R. § 405.834. Unless the carrier or the hearing officer decides to reopen the proceeding, the hearing officer's decision is "final and binding upon all parties to the hearing ..." 42 C.F.R. § 405.835.[1]

## II. *Factual Background*

During the period between January 1, 1983 and September 30, 1984, plaintiff AASP provided 428 round trip ambulance services for three Medicare Part B enrollees: George Dagilus, Francis New, and Joseph Perla ("enrollees"). The ambulance trips at issue involved taking the enrollees from their places of residence to the Dialysis Center of St. Mary Hospital, where they received outpatient dialysis treatment. Acting as the assignee of the enrollees, AASP submitted claims for payment in the amount of $122,656.00 for the ambulance services to Blue Shield, in its capacity as a Medicare Part B carrier.

AASP attached to these claims, forms captioned Supplemental Documentation for Ambulance Transportation ("SDFAT") which were signed by the enrollees' physicians. Each SDFAT form certified that the enrollees' physical condition contraindicated transportation by means other than an ambulance. In addition, AASP filed with Blue Shield narrative letters signed by each enrollees' treating physician, stating the diagnosis of each enrollee and the medical necessity of ambulance services.

Blue Shield initially reduced the requested reimbursement figure of $122,656.00 to $114,347.00 on a reasonable charge basis,

1. In 1986, Congress amended section 1395ff to permit judicial review of certain Part B amount determinations. Those amendments apply only to Medicare services furnished after January 1, 1987, and are therefore not relevant to the claims in this case, which involve services provided prior to that date.

and paid AASP $91,297.00 (80% of the determined reasonable charge). After Blue Shield paid AASP for the ambulance services provided, it conducted a post-payment survey of the enrollees' claims. On the basis of that survey, the carrier concluded that because each of the enrollees could ambulate with the assistance of a walker or wheelchair and were not bed confined, the ambulance services supplied by AASP were not covered by Part B of the Act. In initially reaching this determination, Blue Shield did not employ or otherwise rely on any physician to review and evaluate the enrollees' medical condition at the time of the delivery of the ambulance services. Based upon this determination, Blue Shield demanded that AASP repay to the Medicare program the $91,297.00 paid to AASP on the enrollees' account.

AASP requested and received a "review determination" which affirmed the earlier determination that Part B did not cover the ambulance services provided. AASP subsequently appealed to a Blue Shield appointed hearing officer in accordance with the "fair hearing" provisions of the Medicare regulations. At the hearing, held on July 15, 1986, AASP, represented by counsel, argued that it had fully complied with all Part B regulations by submitting medical certifications and supporting documentation indicating the necessity of ambulance transportation for the three enrollees. Moreover, AASP challenged Blue Shield's decision denying reimbursement on the ground that a non-physician supplier lacked the authority to overrule a medical determination by a physician. Finally, AASP argued that it was entitled to a waiver of liability, pursuant to 42 U.S.C. § 1395pp, on the ground that neither it nor the enrollees knew or could have known that the ambulance services were not medically reasonable and necessary.

At the hearing, Blue Shield indicated that in determining that the ambulance services were not reimbursable under Part B, it relied on § 2120 of the Medicare Carrier's Manual as well as Health Care Financing Administration Regional Medicare Letter Number 10–80. Specifically, Blue Shield maintained that § 2120 of the Manual, as interpreted by Medicare Letter Number 10–80, permits coverage of ambulance services only upon the submission of a claim which *conclusively* contraindicates the feasibility of transport by any other means. The carrier further argued that patients able to ambulate with assistance, with a walker, or wheelchair, as well as patients receiving routine outpatient maintenance dialysis treatments do not normally qualify for ambulance services. On the basis of reviews of medical records of two of the enrolles and an interview with the third enrollee, Blue Shield determined that the enrollees' "medical conditions had not been such as to have contraindicated the use of other means of transportation." Blue Shield also took the position that AASP's request for a waiver of liability should be denied. Specifically, Blue Shield relied on § 7300.2.C.6.b which states that the waiver of liability provision is not applicable where payments for a medically unnecessary item or service is also barred because of a failure to meet a condition of payment required by the regulations.

Following the hearing, the hearing officer requested that a consultant physician review the enrollees' medical records. Based upon that consultation and her own review of the record, the hearing officer made specific findings regarding each of the three enrollees. For each individual, she found that the documentary evidence had failed to establish that the enrollees' condition had been such as to have contraindicated transportation by means other than an ambulance. Moreover, the hearing officer rejected AASP's claim to entitlement to a waiver of liability. The hearing officer noted that § 1879(a) of the Medicare statute provides that such a waiver of liability is available when the denial of payment is based on § 1862(a)(1) or (9). Inasmuch as the instant denial of payment was based on § 1861(s)(7), the hearing officer held that the plaintiff could not take advantage of the waiver.

Plaintiff filed the instant Complaint seeking judicial review of the final determination by the Blue Shield hearing officer that AASP was not entitled to reimbursement

for the ambulance services provided to the three enrollees. As previously stated, the matter is before this Court on cross motions for summary judgment. However, because this Court, for the reasons stated below, determines that, pursuant to Fed.R. Civ.P. 12(b)(1) it lacks subject matter jurisdiction, the Complaint will be dismissed.

### III. *Federal Subject Matter Jurisdiction*

■ Prior to 1986, the Supreme Court had held that the Social Security Act provided for judicial review only of determinations of an individual's entitlement to benefits under both Part A and Part B of Title XVIII, as well as review of determinations of the amount of benefits awarded under Part A. 42 U.S.C. § 1395ff(a). *United States v. Erika,* 456 U.S. 201, 207, 102 S.Ct. 1650, 1653, 72 L.Ed.2d 12 (1982). The Court held that by omitting a provision for judicial review of determinations of the amount of Part B awards, Congress intentionally foreclosed review of those determinations:

> Section 1395ff thus distinguishes between two types of administrative decisions: eligibility determinations (that decide whether an individual is 65 or over or 'disabled' within the meaning of the Medicare program) and amount determinations (that decide the amount of the medicare payment to be made on a particular claim). Conspicuously, the statute fails to authorize further review for determinations of the amount of Part B awards. In the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims.

*Id.* at 208, 102 S.Ct. at 1654. Indeed, as the Supreme Court held in *Heckler v. Ringer,* "Congress has not . . . provided for judicial review of the denial of Part B claims." 466 U.S. 602, 608 n. 4, 104 S.Ct. 2013, 2018 n. 4, 80 L.Ed.2d 622 (1984). Thus, prior to 1986, the Supreme Court had clearly held that no judicial review was available for Part B claims.

This holding, however, was modified by *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) (hereinafter "Michigan Academy"), in which the Supreme Court rejected the proposition that Congress had intended to preclude judicial review of *all questions* affecting the amount of benefits payable under Part B of the Medicare program. To be sure, the Court affirmed its earlier holding in *Erika* that Congress intended to foreclose review of amount determinations remitted finally and exclusively to adjudication by private insurance carriers in a fair hearing:

> Careful analysis of the governing statutory provisions and their legislative history thus reveals that Congress intended to bar judicial review only of determinations of the amount of benefits to be awarded under Part B. Congress delegated this task to carriers who would finally determine such matters in conformity with regulations and instructions of the Secretary.

*Michigan Academy,* 106 S.Ct. at 2141. However, the Court, noting " 'the strong presumption that Congress did not mean to prohibit all judicial review of [administrative] decisions,' " *Id.* at 2135–36 *quoting Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967), held that *Erika* did not extend the preclusion of judicial review beyond Part B amount determinations. *Id.*

Specifically, the Court held that any matter which Congress did not delegate to the private insurance carriers is subject to judicial review in the federal courts:

> We conclude . . . that those matters which Congress did not leave to the carrier—including challenges to the validity of the Secretary's instructions and regulations—are not impliedly insulated from judicial review . . .

*Michigan Academy,* 106 S.Ct. at 2141. *Michigan Academy* involved a challenge to the validity of a regulation authorizing Medicare Part B benefits in different amounts for similar medical services; a matter whose resolution was not within the jurisdiction of the insurance carrier hearing

officer. The Court, in determining that such a challenge was cognizable in federal court held:

> [The Medicare statute] simply does not speak to *challenges mounted against the method by which amounts are to be determined rather than the determinations themselves.* As the Secretary has made clear, 'the legality, constitutional or otherwise, of any provision of the Act or regulations relevant to the Medicare Program' is not considered in a 'fair hearing' held by a carrier to resolve a grievance related to a determination of the amount of a Part B award.

*Michigan Academy,* 106 S.Ct. at 2138–39 (emphasis added). Thus, the Supreme Court concluded that federal courts lack jurisdiction to review issues falling within the exclusive purview of the insurance carrier hearing officer (e.g., Medicare Part B amount determinations) but have jurisdiction to review issues falling outside the purview of the insurance carrier hearing officer (e.g., the method, as prescribed by statute or regulation, by which the Medicare Part B amounts are determined). *Id.*

The Third Circuit, in applying *Michigan Academy* to a Part B claim, held: "to the extent that the plaintiff's claims involve matters not within the statutory jurisdiction of the hearing officer, review jurisdiction may be available ..." *Medical Fund–Philadelphia Geriatric Center v. Heckler,* 804 F.2d 33, 38 (3d Cir.1986). The Third Circuit noted:

> It is within the exclusive jurisdiction of the hearing officer to decide claims when requests for payments under Part B 'are denied or are not acted upon with reasonable promptness or when the amount of such payment is in controversy.' However, by regulation, the hearing officer 'is to comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as with policy statements, instructions, and other guides issued by the Health Care Financing Administration (HCFA) in accordance with the Secretary's agreement with the carriers.' The hearing officer may not interpret the statute differently than

does the HCFA nor may he comment upon the legality of the Act or regulations issued thereunder.

*Id.* Thus, the Court held that inasmuch as the allegation that the HCFA had erroneously applied its own policy addressed an issue within the jurisdiction of the hearing officer, the Court was precluded from judicial review. *Id.* at 39. Conversely, the Court held that attacks on the legality of statutory provisions, regulations, and policies of the Secretary, matters upon which the hearing officer has no authority to even comment, were subject to judicial review. *Id.*

The distinction that emerges from federal court decisions subsequent to *Michigan Academy* is that "federal jurisdiction exists where there is a challenge to the validity of an agency rule or regulation, but jurisdiction is lacking where the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations." *Kuritzky v. Blue Shield of Western New York, Inc.,* 850 F.2d 126, 128 (2d Cir.1988). Affirming the district court's dismissal of a complaint alleging that the insurance carrier employed a flawed methodology in determining the reasonable charge for certain medical services, the Second Circuit stated:

> [T]he statement in *Michigan Academy* that challenges to the "method" of calculating benefits are reviewable as opposed to challenges to the "determinations themselves," which are not, clearly refers to the distinction between the rules, regulations, and statutes setting forth the proper computation method and the carrier's application of those provisions in determining the benefits owed ... "Method" does not mean the carrier's method of applying the regulations, which *Erika* held was unreviewable; rather, it means the method set forth in the Secretary's regulatory scheme that prescribes how the carriers are to calculate benefits. *Michigan Academy* held that a challenge to this prescribed method was reviewable.

*Id.* at 128. Thus, the Second Circuit concluded that because "[p]laintiff's claims allege only misapplication of valid regula-

tions [they] are therefore unreviewable under *Erika.*" *Id.*

Indeed, without exception, each court that has addressed the issue has refused to extend the scope of *Michigan Academy* to include judicial review of claims alleging misapplication of valid regulations, failure to follow valid procedures and policies, or the conducting of an unfair hearing. *See, e.g., United States v. Bushman,* 862 F.2d 1327, 1329 (8th Cir.1988) (court without jurisdiction to review claim that hearing officer based her decision on inadmissible evidence and conducted an unfair hearing); *Association of Seat Lift Manufacturers v. Bowen,* 858 F.2d 308, 316–17 (6th Cir.1988) (court without jurisdiction to review claim that insurance carrier's application of the "inherent reasonableness" criterion was flawed); *Neiman v. Secretary of HHS,* Medicare & Medicaid Guide (CCH) ¶ 37,569 (E.D.N.Y.1988) (court without jurisdiction to review claim alleging that carrier acted *ultra vires* in refusing to process certain claims); *Mobile Medical Services, Inc. v. Arkansas Blue Cross and Blue Shield,* 676 F.Supp. 194, 196–97 (W.D.Ark.1987) (court without jurisdiction to review claim that hearing officer, after exercising legally delegated discretion, made erroneous findings). *See generally Linoz v. Heckler,* 800 F.2d 871, 875–76 (9th Cir.1986) (judicial review available to review Part B regulations asserted to be unconstitutional or inconsistent with Act). As the Sixth Circuit, in dismissing a Part B claim for lack of subject matter jurisdiction, held in *Association of Seat Lift Manufacturers v. Bowen:*

> Nor is the instant challenge one to the 'methodology' of the determination since the challenges did not involve the statutory or regulatory method used to determine a rate. In the instant case, as in *Erika,* only the implementation of a method, not the method itself, was at issue.

858 F.2d at 317.

In summary, our reading of *Michigan Academy* and subsequent cases, leads to the conclusion that federal courts only have jurisdiction to review Part B claims which raise challenges to the constitutionality or validity of the Medicare statute, regula-tions, and mandated procedures and not to determinations delegated to the insurance carrier. Thus, in deciding whether this Court has jurisdiction to hear plaintiff's claims, we must determine whether the Complaint genuinely and substantively asserts that the regulations, policies or mandated procedures implicated in the instant action are violative of either the Medicare Statute or Constitution.

## IV. *Plaintiff's Complaint*

In *Medical Fund–Philadelphia Geriatric Center v. Heckler,* the Third Circuit held that the "district court must examine its jurisdiction over each claim [asserted by plaintiff], as its jurisdiction depends on whether the claim lay outside the jurisdiction of the hearing officer." 804 F.2d at 39. Plaintiff has filed a Complaint containing thirteen separate counts, each challenging the administrative determination reached by Blue Shield. Accordingly, we shall examine each of the thirteen counts in order to determine whether they lay outside the jurisdiction of the hearing officer and are, therefore, subject to judicial review in this Court.

■ Counts I, II and III of the Complaint challenge the determination by the hearing officer that the use of means of transportation other than an ambulance by the three enrollees was not medically contraindicated. Specifically, plaintiff alleges that the hearing officer reached her determination based upon insufficient evidence and in spite of physician's certifications attesting to the medical necessity for ambulance transportation which plaintiff characterizes as binding upon the hearing officer. Plaintiff does not challenge, in Counts I, II and III, any statutory provision or any rule, regulation, or policy promulgated by the Secretary. Rather, plaintiff simply alleges that the hearing officer failed to correctly apply and follow the proper evidentiary and procedural provisions of both the regulations and the Medical Carriers' Manual, thereby depriving plaintiff of amounts legally reimbursable. These allegations address the precise type of matters left to

review by the hearing officer in a "fair hearing" and which are precluded from judicial review by *Erika* and *Michigan Academy*. Plaintiff's allegations that the hearing officer's specific factual determinations resulted from misapplication of valid rules and regulations are not reviewable by this Court. *See Medical Fund–Philadelphia Geriatric Center v. Heckler*, 804 F.2d at 36–39; *Kuritzky v. Blue Shield of Western New York*, 850 F.2d at 128. Accordingly, Counts I, II, and III will be dismissed for lack of subject matter jurisdiction.

■ Count IV of the Complaint alleges that the hearing officer erred in denying coverage despite the fact that plaintiff had rebutted the presumption established in Letter 10–80 and the Medicare Guidelines that non-ambulance transportation is indicated where the enrollee has ambulatory capability. Plaintiff neither challenges the rebuttable presumption established by the Secretary nor the policies underlying such a presumption. Rather, the plaintiff challenges "not the validity of a statutory provision or a regulation but instead the finding made by Blue Cross and the hearing officer after the exercise of the discretion given to each by the Secretary and the Health Care Financing Administration." *Mobile Medical Services, Inc. v. Arkansas Blue Cross and Blue Shield*, 676 F.Supp. at 197. Indeed, the plaintiff's allegation is, in substance, that the HCFA "erroneously applied its own policy" which the Third Circuit has held is the type of decision that is not reviewable in a federal court. *Medical Fund–Philadelphia Geriatric Center v. Heckler*, 804 F.2d at 39. Thus, Count IV of the Complaint will be dismissed for lack of subject matter jurisdiction.

■ Count V of the Complaint challenges the hearing officer's interpretation and application of Regional Medicare Letter 10–80:

> Applied in the manner in which it has been applied in this case, Letter 10–80 is arbitrary and irrational ...

First Amended Complaint, ¶ 70. Thus, the Complaint, on its face, reveals that plaintiff's challenge is to the allegedly erroneous application of HCFA policy, which is not subject to federal court jurisdiction. *Medical Fund–Philadelphia Geriatric Center v. Heckler, supra*. Accordingly, Count V of the Complaint will be dismissed for lack of subject matter jurisdiction.

■ Counts VI and VII of the Complaint purports to challenge the provisions of the Medicare Carrier's Manual § 2120 and to Regional Medicare Letter No. 10–80 as having been issued in violation of the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706. Plaintiff alleges that § 2120 of the Carriers Manual and Letter 10–80, by establishing a preclusive criteria which is determinative of an enrollee's right to ambulance services, are substantive rules conclusively determining the rights of private parties, and are, therefore, subject to the notice and comment provisions of the APA. First Amended Complaint, ¶¶ 73–76. Plaintiff finally alleges that in promulgating § 2120 of the Carriers Manual and Letter 10–80, the Secretary unlawfully circumvented the requirements of the APA. First Amended Complaint, ¶¶ 77–78.

A simple reading of Counts VI and VII of the Complaint clearly shows, however, that plaintiff is not challenging the substantive content of either Letter 10–80 or § 2120 of the Carriers' Manual but, rather, the way in which both were applied in this case:

> *Although neither the Carriers Manual nor Letter 10–80 appears facially to establish a preclusive criteria* which, alone and without a physician's evaluation on a case-by-case basis, would be determinative of a Part B Enrollees' rights to Ambulance Services, it is apparent from this case that the Secretary and the administrator of HCFA do intend that both the Carriers Manual, Sections 2[1]20.2.A and B, and Letter 10–80 serve as just such preclusive criteria. (emphasis added).

First Amended Complaint, ¶ 72. In other words, plaintiff is challenging the validity of the hearing officer's application of the aforementioned provisions. As previously stated, a federal court does not have jurisdiction to review the hearing officer's

method of applying the regulations. *Kuritzky v. Blue Shield of Western New York,* 850 F.2d at 128; *Association of Seat Lift Manufacturers v. Bowen,* 858 F.2d at 316. As the Eighth Circuit stated in *United States v. Bushman:*

> Were we to review such a claim, we would be opening the door to every dissatisfied Medicare Part B claimant who believes the decision maker acted unfairly and made a decision based on the wrong evidence. This we cannot do in light of the congressional mandate to place the ultimate discretion for claims determination in the Medicare carrier.

862 F.2d at 1329. On this basis alone, Counts VI and VII must be dismissed for lack of subject matter jurisdiction.

■ The Court further notes, however, that Counts VI and VII are predicated upon a false assumption, to wit, that the Carrier's Manual provisions and Letter 10–80 are "substantive rules." The distinction between "substantive rules" subject to APA notice and comment requirements and "interpretive rules" which are not so subject, was articulated by the Ninth Circuit in *Linoz v. Heckler:*

> "Interpretive rules are those which merely clarify or explain existing law or regulations." *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir.1983). They are "non-binding" and do not "foreclose alternate courses of action or conclusively affect rights of private parties." *Batterton v. Marshall,* 648 F.2d 694, 702 (D.C. Cir.1980). Only substantive rules are subject to the APA. *Powderly,* 704 F.2d at 1098.

800 F.2d 871, 877 (9th Cir.1986). It is clear that the Carrier's Manual provisions and Letter 10–80 are interpretive rules not subject to the APA notice and comment requirement.

In point of fact, the Carrier's Manual provisions and Letter 10–80, on their face, do nothing more than provide non-binding guidance concerning the statutory and regulatory requirements for reimbursement of ambulance services. Section 2120.2.A and B of the Carrier's Manual interprets and provides guidance concerning application of

42 C.F.R. § 405.232(i)(1), which provides for payment for ambulance services "only if other means of transportation would endanger the beneficiary's health." Letter 10–80 merely clarifies the type of documentation that will suffice to establish that ambulance services are reimbursable. The record makes it quite clear that neither the Carrier's Manual's provisions nor Letter 10–80 prevented the carrier and fair hearing officer from finding in plaintiff's favor if the evidence had, in their opinion, supported such a finding. The Carrier's Manual provisions and Letter 10–80 are non-binding and do not foreclose alternate courses of action or conclusively affect the rights of private parties. As such, the Carrier's Manual provisions and Letter 10–80 are not substantive rules but, rather, interpretive rules.

The Court notes that the Provider Reimbursement Manual provides guidance concerning the interpretation of Medicare Part A reimbursement regulations similar to that provided by the Carrier's Manual for Part B reimbursement. Courts have consistently held that the provisions of the Provider Reimbursement Manual are interpretive rules. *See, e.g., Creighton Omaha Regional Health Care Corp. v. Bowen,* 822 F.2d 785, 791 (8th Cir.1987); *St. Mary's Hospital v. Blue Cross & Blue Shield Association,* 788 F.2d 888, 890–91 (2d Cir. 1986); *John Muir Memorial Hospital, Inc. v. Schweiker,* 664 F.2d 1337, 1339 (9th Cir. 1981).

■ Counts VIII and IX of the Complaint alleges that the hearing officer incorrectly interpreted provisions of the Act resulting in an improper refusal to apply the waiver of liability provision of § 1879 of the Medicare Act:

> To refuse to apply the waiver of liability provisions of Section 1879 of the Act when the denial of coverage in this case was in fact made under Section 1862(a)(2) violates the provisions of the Medicare Act itself.

First Amended Complaint, ¶ 93. Preliminarily, we would note that Counts VIII and IX are predicated on an incorrect assumption, to wit, that the hearing officer's deter-

mination that the services provided to the enrollees were not covered services was made under section 1862(a)(1) of the Act. 42 U.S.C. § 1395y(a)(1). Plaintiff presumably asserts this position because the Act provides for a waiver of liability under certain circumstances when payment is denied under § 1862(a)(1). *See* 42 U.S.C. § 1395pp(a)(1). However, the record of decision by the hearing officer unambiguously reveals that the denial of payments in question was made under section 1861(s)(7) of the Act. 42 U.S.C. § 1395x(s)(7).

In any case, the correctness of the determination of the applicability of the waiver of liability provision of Section 1879, an issue that lies within the jurisdiction of the hearing officer, is not subject to review by this Court. As the Third Circuit held in *Medical Fund–Philadelphia Geriatric Center v. Heckler*, a district court's "jurisdiction depends on whether the claim lay outside the jurisdiction of the hearing officer." 804 F.2d at 39. Indeed, we would note that the issue of the applicability of the waiver of liability provision of Section 1879 was raised by the parties and considered by the hearing officer. Accordingly, Counts VIII and IX of the Complaint will be dismissed for lack of subject matter jurisdiction.

■ Count X of the Complaint challenges the policy of the Secretary that "ambulatory capability signifies that ambulance services are not medically necessary", First Amended Complaint, ¶ 98, and that "an ambulance service provider must independently determine the medical necessity of ambulance service, even though the ambulance service provider is not at all qualified to do so." *Id.*, ¶ 99. Plaintiff, however, fails to identify any rule, regulation, policy, or statutory provision in support of the challenge. At most, plaintiff attempts to characterize, as official policy, the *result* of the hearing officer's application, whether flawed or not, of existing valid regulations and policies. Absent identification of the specific policy or regulation claimed to be invalid or unconstitutional, Count X is not a challenge to the Secretary's regulations, methods, or poli-

cies in the sense required by *Michigan Academy*. Accordingly, Count X will be dismissed for lack of subject matter jurisdiction.

■ Counts XI, XII, and XIII of the Complaint allege that the hearing officer's reliance in reaching her determination upon, *inter alia*, a consultant not subject to cross examination by plaintiff, violated plaintiff's Fifth Amendment due process rights. First Amended Complaint, ¶¶ 103–109, 111, 113. Specifically, plaintiff contends that:

> According to the Hearing Officer's opinion, the consultant made the determination for the Hearing Officer that the Ambulance Services were not medically necessary.

First Amended Complaint, ¶ 104. As a result, plaintiff alleges that:

> Either the Hearing Officer abdicated her responsibilities under 42 C.F.R. § 405.801 et seq. to make an independent review of the Carrier's determination to require the repayment of the Funds or employed the consultant as a sort of "expert witness."

First Amended Complaint, ¶ 105. Thus, plaintiff appears to be advancing two claims: (a) that it was effectively denied a hearing because the outcome of the case was based exclusively on the consultant's report or (b) that the fair hearing examiner unfairly prevented plaintiff's attorney from cross-examining the consultant. We deal with the claims in inverse order.

■ To the extent that plaintiff is contending that the fair hearing officer "acted unfairly and made a decision based on the wrong evidence", Counts XI, XII, and XIII do not give rise to a reviewable claim. *United States v. Bushman*, 862 F.2d at 1329. As previously stated, the allegation that a regulation or policy, whose validity is not challenged, was erroneously applied does not constitute a reviewable claim. *Medical Fund–Philadelphia Geriatric Center v. Heckler*, 804 F.2d at 39. We would, moreover, note that the use by the hearing examiner of a report by the consultant, without providing plaintiff with an opportunity to cross-examine, was neither

improper nor violative of plaintiff's due process rights.

The record clearly reflects, and the parties do not dispute, that the consultant's report was limited to an evaluation of pertinent medical data provided by the parties at the hearing. Thus, the hearing examiner's purpose in retaining the expert was merely to obtain assistance in evaluating data which was properly developed at a fair hearing. Under such circumstances, courts have consistently held that there is no due process right to cross examine the expert consultant. For example, in *Coppenbarger v. Federal Aviation Administration*, 558 F.2d 836 (7th Cir.1977), the Seventh Circuit upheld a Federal Aviation Administrator hearing examiner's refusal to permit cross examination of an expert with whom he had consulted prior to denying plaintiff an exemption from federal regulations governing the issuance of airman medical certificates. In so holding, the Seventh Circuit stated:

> Petitioner contends, however, that he should have had an opportunity to cross-examine the experts whom the Administrator consulted in evaluating petitioner's medical reports. We disagree. Petitioner's argument might be valid if these experts had affirmatively provided evidence about petitioner's medical condition. But the Administrator's purpose in retaining the experts was merely to obtain their help in evaluating the data which petitioner had supplied. The Administrator was entitled to do this, and petitioner had no more right to cross-examine the experts than he had to cross-examine the Administrator himself.

*Id.* at 840; *accord Graham v. NTSB*, 530 F.2d 317, 320 (8th Cir.1976); *KFC National Management Corp. v. NLRB*, 497 F.2d 298, 303–305 (2d Cir.1974).

■ As to plaintiff's allegation that it was effectively denied any hearing at all due to the hearing examiner's alleged exclusive reliance upon the expert consultant's report, it, too, must fail. A review of the hearing officer's decision compels the conclusion that she reached her determination on the basis of an independent consideration of the evidence of record. Indeed, for each of the three enrollees, the hearing officer reviewed the information contained in the SDFATS, the medical records, and the statements by the physicians submitted by plaintiff. That she also considered the consultant's analysis cannot sustain the allegation that plaintiff was denied a fair hearing.

■ The Court notes that the Supreme Court has held that the Medicare Part B hearing process fully meets the requirements of due process. *Schweiker v. McClure*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). In so holding, the Court emphasized that "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 200, 102 S.Ct. at 1672 *quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Third Circuit, in *Kahn v. United States*, held that the fundamentals of procedural due process are adequate notice and an opportunity to be heard:

> Of course the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner but the concept is flexible ...

753 F.2d 1208, 1218 (3d Cir.1985); *see also Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 569–70 & n. 7, 92 S.Ct. 2701, 2705 & n. 7, 33 L.Ed.2d 548 (1972); *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

The joint stipulated record reflects that plaintiff received clear notice of the issues in the case and was presented an opportunity to be heard, of which it availed itself with the assistance of counsel. Indeed, we note that plaintiff availed itself, at each stage of the process, with the full range of remedial and review mechanisms provided by Congress to Medicare Part B claimants. We find nothing in the record to even suggest that plaintiff's due process rights under the Fifth Amendment were violated by the hearing process described *supra*.

Plaintiff's attempt to cast its challenge to the hearing examiner's determinations in constitutional terms must fail. Where, as here, Congress has created a comprehensive statutory mechanism, including significant remedial schemes, governing the rights of private citizens under a federal program, the courts must resist the temptation to impose what, in their view, might be superior safeguards to the due process rights of those citizens. *See Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2416–2417, 76 L.Ed.2d 648 (1983). As Justice O'Connor, writing for the Court in *Schweiker v. Chilicky,* stated:

> When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of administration, we have not created additional [constitutional] remedies.

— U.S. ——, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988).

Because Counts XI, XII, and XIII fail to raise viable constitutional claims but, rather, merely attack the hearing officer's interpretation and implementation of valid rules and regulations, this Court lacks subject matter jurisdiction over them. Accordingly, Counts XI, XII, and XIII will be dismissed.

For the reasons stated, this Court dismisses Counts I through XIII of plaintiff's Complaint on the ground that, as heretofore pointed out, each of these counts lacks a basis for subject matter jurisdiction of the Court.