911 F.2d 901
 59 USLW 2183, 31 Soc.Sec.Rep.Ser. 3,
Medicare&Medicaid Gu 38,660
 AMERICAN AMBULANCE SERVICE OF PENNSYLVANIA, INCORPORATED, Appellant,
v.
SULLIVAN, Louis W., in his capacity as Secretary of Health
and Human Services; Roper, William, M.D., in his capacity
as Administrator of the Health Care Financing
Administration; and Medical Service Association of
Pennsylvania, d/b/a Pennsylvania Blue Shield.
 No. 89-1582.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 28, 1989.
Decided Aug. 14, 1990.
 
 Earl Stirling Lathrop, III (argued), Ross Van Denbergh, Ehmann, Van Denberg & Trainor, P.C., Philadelphia, Pa., for appellant.
 Michael M. Baylson, U.S. Atty., Linda L. Shafer, Asst. U.S. Atty., Philadelphia, Pa., for Louis W. Sullivan, appellee.
 Beverly Dennis, III, Chief Counsel, Region III, James C. Newman, Supervisory Asst., Regional Counsel, Javier A. Arrastia (argued), Asst. Regional Counsel, Office of Gen. Counsel, Dept. of Health and Human Services, Philadelphia, Pa., for William Roper, M.D., appellee.
 Before SLOVITER and BECKER, Circuit Judges, and LIFLAND, District Judge*.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This appeal by American Ambulance Service of Pennsylvania, Inc. ("AASI"), a health care provider, challenges the district court's decision that it lacked subject matter jurisdiction to review certain Medicare Part B recoupment determinations.[1] The recoupment determinations were made by a Fair Hearing Officer, acting under the auspices of the Medical Service Association of Pennsylvania ("Blue Shield"), which, in turn, acts as agent for the Secretary of Health and Human Services ("the Secretary"). The determinations obliged AASI to reimburse Blue Shield for payments previously made by Blue Shield to AASI for ambulance services furnished to three dialysis patients between January 1, 1983 and September 30, 1984. The district court's conclusion that it lacked jurisdiction was grounded on United States v. Erika, Inc., 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), which held that Medicare Part B claims are not ordinarily reviewable in federal court. The district court found Bowen v. Michigan Academy of Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), which held that Medicare Part B claims are reviewable only if a complaint challenges the method by which the claim was determined, inapplicable.[2] It dismissed all counts of AASI's thirteen-count complaint on jurisdictional grounds because it construed AASI's claims as challenges to the Hearing Officer's individualized determinations, not the method by which she made them.
 
 
 2
 AASI appeals the decision only with respect to counts VI, VII, VIII and IX. Given its jurisdictional ruling, the district court did not reach the merits, but, as will be seen, the jurisdictional issues before us cannot be understood or decided without taking into account the parties' contentions on the merits. We will therefore analyze those contentions throughout this opinion. However, nothing in this opinion should be construed as a judgment on the merits. That judgment must come, in the first instance, from a district court with jurisdiction to evaluate the claims.
 
 
 3
 AASI's first merits contention is that both the Secretary's Carrier Manual provision and the Health Care Financing Administration ("HCFA") Regional Medicare letter, on which the Hearing Officer relied in upholding Blue Shield's claim for reimbursement, conflict with and impermissibly modify the Medicare statute, Title XVIII of the Social Security Act, 42 U.S.C. Sec. 1395 et seq. Second, AASI asserts that although overpayments[3] like the one at bar are statutorily waived as long as the provider acted reasonably and had no reason to know that Blue Shield would deny the payment, another provision in the Carrier Manual automatically denies the benefits of this statutory waiver to ambulance service providers. In AASI's view, that denial cannot be reconciled with the statute, and hence is invalid. The Secretary counters that these challenges by AASI are merely to the application of the rules, that such applications are not reviewable under Erika or Michigan Academy, and that the district court's dismissal for lack of subject matter jurisdiction was therefore proper.
 
 
 4
 We disagree with the Secretary. After careful review of the record, we conclude that AASI's challenge to the Carrier Manual provision and HFCA Regional Medicare letter is a challenge to the method Blue Shield uses to determine its claims, not merely to the results of that method in this case. We also believe that AASI's challenge to the blanket exclusion of ambulance service providers from the statute's waiver provisions is a challenge to the Carrier Manual itself, not to its application. We thus find the requisites of the Michigan Academy exception to Erika met, conferring jurisdiction on the district court. We will therefore reverse and remand for consideration of the merits.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 5
 Part B of the Medicare program is a voluntary, federally subsidized health insurance program that covers medical expenses, including necessary ambulance services, not covered under Part A of the program. 42 U.S.C. Sec. 1395j-1395w-2.[4] AASI's underlying claims turn on who decides what a "necessary ambulance service" is and how that determination is made. Normally, a patient submits a Medicare voucher to a health care provider. The provider then submits the voucher to an insurance carrier (in this case Blue Shield), 42 U.S.C. Sec. 1395u(b)(3), which pays the provider for roughly 80% of the provider's submitted costs. The other 20% is borne by the patient. The carrier is then reimbursed from the Social Security Trust Fund. In designing Part B, Congress authorized the Secretary to delegate to private insurance carriers the responsibility for setting rates, reviewing claims, and making payments from the Social Security Trust Fund on behalf of the Secretary. 42 U.S.C. Sec. 1395u. The Secretary pays the participating carriers' costs of administration. 42 U.S.C. Sec. 1395u(c).
 
 
 6
 Between January 1, 1983, and September 30, 1984, AASI provided a total of 428 ambulance trips to dialysis patients George Dagilus, Francis New, and Joseph Perla ("Enrollees"), all of whom were enrolled in the Part B program. AASI's total charges for these services were $122,656, and it submitted claims totaling this amount to Blue Shield. Attached to the claims were forms known as Supplemental Documentation for Ambulance Transportation ("SDFAT"), signed by physicians, certifying: (1) that the enrollee's physical condition required movement by stretcher; (2) that transportation by means other than an ambulance was "contraindicated"; and (3) that the enrollee was confined to bed both before and after the ambulance transportation. In addition to the SDFATs, AASI also filed letters from each enrollee's treating physician stating that ambulance services were medically necessary.
 
 
 7
 After evaluating these claims, Blue Shield decided to reimburse AASI, but determined that the $122,656 figure should be reduced to $114,347, the amount it found to be a reasonable charge for the services. Thus, Blue Shield paid AASI $91,420.60, or 80% of $114,347. Several months later, Blue Shield conducted a post-payment survey on these claims. The survey, based on a review of the patients' hospital and nursing home records, indicated that the enrollees had possessed some ambulatory ability at the time of the services in question, and that ambulance service was not called for. At that point, Blue Shield asked for its $91,420.60 back. At AASI's request, Blue Shield reviewed that decision, but did not change its mind.
 
 
 8
 AASI then appealed to a Blue Shield appointed Fair Hearing Officer in accordance with 42 C.F.R. Sec. 405.820-872. The Hearing Officer, along with a physician consultant, reviewed the enrollees' medical records and, in a written opinion, rejected AASI's appeal based upon two determinations. First, the Hearing Officer determined that other means of transportation were not conclusively contraindicated. 42 U.S.C. Sec. 1395x(s)(7). Second, the Hearing Officer determined that AASI was not entitled to a waiver of liability because the denial was based on Sec. 1395x(s)(7), not Sec. 1395y(a)(1). 42 U.S.C. Sec. 1395pp waives provider liability for overpayments if payment is denied pursuant to Sec. 1395y(a)(1) and the provider could not have reasonably expected that payment would be denied.
 
 
 9
 AASI thereupon sued in the district court. Its complaint alleged that it had complied with all of Part B's requirements, and that Blue Shield and the Hearing Officer were not free to overrule the determinations by the enrollees' physicians that ambulance services were necessary and that all other forms of transportation were contraindicated. AASI also alleged that it was entitled to a waiver of reimbursement liability, pursuant to 42 U.S.C. Sec. 1395pp, on the ground that neither it nor its enrollees knew or should have known that the services in question were not reasonable and necessary.
 
 
 10
 Blue Shield responded with a motion for summary judgment, arguing that Sec. 2120 of the Medicare Carrier Manual and HCFA Regional Letter Number 10-80 required that all other forms of transportation be conclusively contraindicated, not merely contraindicated, and that therefore it was free to re-evaluate diagnoses by physicians, treating or non-treating. Blue Shield also contended that Sec. 7300.2.C. of the Carrier's Manual prevented AASI from qualifying for a waiver because payment for the services in question was barred by 42 U.S.C. Sec. 1395x(s)(7). AASI filed a cross summary judgment motion. After considering the cross-motions, the district court dismissed the complaint for lack of subject matter jurisdiction. 716 F.Supp. 861.
 
 II. JURISDICTION GENERALLY
 
 11
 Ordinarily, administrative Medicare Part B determinations, unlike Medicare Part A determinations, are not reviewable by federal courts. See United States v. Erika, Inc., 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). Congress's desire to distinguish between the review procedures for Parts A and B is clear from both the statute itself and the legislative history. 42 U.S.C. Sec. 1395ff(b)(1)(C) provides an individual "dissatisfied with any [Part A] determination ... [with a right to] a hearing ... by the Secretary ... and to judicial review " (emphasis added). 42 U.S.C. Sec. 1395u(b)(3)(C), on the other hand, provides a dissatisfied Part B recipient only with "an opportunity for a fair hearing by the carrier " (emphasis added). The legislative history specifically indicates that Congress did not mean to afford every aggrieved Part B recipient access to federal courts. See H.R.Conf.Rep. No. 1605, 92d Cong., 1st Sess. 61, reprinted in 1972 U.S.Code Cong. & Admin. News 4989, 5394. See also Erika, 456 U.S. at 208-11, 102 S.Ct. at 1654-55. Thus, in Erika, the Supreme Court found that, although judicial review is ordinarily presumed, there is "persuasive evidence that [in the Part B situation] Congress deliberately intended to [foreclose judicial] review of [a final agency action]". Id. at 208, 102 S.Ct. at 1654 (citing Lehman v. Nakshian, 453 U.S. 156, 162-63, 101 S.Ct. 2698, 2702-03, 69 L.Ed.2d 548 (1981)); Fedorenko v. United States, 449 U.S. 490, 512-13, 101 S.Ct. 737, 750, 66 L.Ed.2d 686 (1981).
 
 
 12
 However, in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), the Court narrowed the potentially sweeping scope of Erika's limit on federal jurisdiction by articulating a distinction between the "method by which [Part B] amounts are to be determined [and] the determinations themselves." Id. at 675, 106 S.Ct. at 2138 (emphases in original). "Sec. 1395u(b)(3)(C) [which was construed in Erika to limit Part B review] simply does not speak to challenges mounted against the method [used by the Secretary in making determinations]." Id. Thus, in this case, AASI characterizes its claims against the Secretary as challenging the method which Blue Shield, acting as the Secretary's agent, makes its determinations, not the determinations themselves. If AASI's characterization is correct, then the district court erred in dismissing for lack of jurisdiction. See Medical Fund-Philadelphia Geriatric Center v. Heckler, 804 F.2d 33, 38-39 (3d Cir.1986).[5]
 
 
 13
 As we explained in Medical Fund, Erika and Michigan Academy define the ends of a continuum. At one end are disputes over amount computations at issue in a particular case. At the other are disputes arising from the Secretary's rules, regulations and instructions which are applied by the Hearing Officer. A Hearing Officer is not at liberty to disregard these rules. More specifically, he or she may not determine the validity of (1) the Medicare Act, (2) regulations issued thereunder, (3) policy statements, (4) instructions, and (5) other guidelines issued by HCFA. 42 C.F.R. Sec. 405.860 (1986); Carrier's Manual Sec. 12016. "[M]atters which Congress did not delegate to private carriers, such as challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law." Michigan Academy, 476 U.S. at 680, 106 S.Ct. at 2140-41 (emphasis in original). With this background in mind, we turn our attention to where the issues raised by AASI fall on the Erika/Michigan Academy continuum.
 
 
 14
 III. CARRIER MANUAL SECTION 2120B AND LETTER 10-80
 
 
 15
 AASI's overarching merits contention is that the Medicare statute and regulations impose the responsibility for determining medical necessity on the physician, and that the physician's certification provides a baseline presumption of medical necessity that underlies the entire Act. In other words, AASI maintains that as long as a physician certifies that a service was necessary, the Secretary must accept that judgment.
 
 
 16
 In relevant part, the pertinent statutes state:
 
 
 17
 [P]ayment for services ... may be made ... only if ... a physician certifies ... that ... (B) in the case of medical and other health services ... such services are or were medically required. 42 U.S.C. Sec. 1395n(a)-n(a)(2).
 
 
 18
 "[M]edical and other health services" means ... (7) ambulance service where the use of other methods of transportation is contraindicated by the individual's condition, but only to the extent provided in the regulations.... 42 U.S.C. Sec. 1395x(s)-x(s)(7).
 
 
 19
 The regulations, which interpret the statute, provide:
 
 
 20
 Medicare Part B pays for ambulance transportation only if -(1) Other means of transportation would endanger the beneficiary's health.... 42 C.F.R. Sec. 410.40(b) and (b)(1).
 
 
 21
 The Secretary promulgates a Carrier's Manual and various Regional Letters which, when used by Hearing Officers evaluating claims like the one at bar, are supposed to clarify and interpret the relevant, but often convoluted, statutory provisions and administrative rules. Their purpose is to foster consistency throughout the program and to make the Hearing Officers' jobs easier. The two provisions relevant to this claim are Carrier Manual Sec. 2120(B) and HCFA Regional Medicare Letter 10-80. Carrier Manual Sec. 2120.2(B) states that:
 
 
 22
 A claim may be denied on the ground that the use of ambulance service was unreasonable in the treatment of the illness or injury involved notwithstanding the fact that the patient's condition may have contraindicated the use of other means of transportation.
 
 Letter 10-80 states that:
 
 23
 To be considered a covered service, the claim file for the ambulance trip must conclusively contraindicate (i.e., make inadvisable) the feasibility of transport by any other method. (Emphasis added.)
 
 
 24
 Summarizing, Sec. 2120B of the Carrier Manual states that a claim may be denied as unreasonable even if all other forms of transportation are contraindicated, and Regional Letter 10-80 implies that even if all other forms of transportation are contraindicated, before a claim can be approved, the record must show that all other means are conclusively contraindicated. AASI maintains that Letter 10-80's use of the term "conclusively contraindicate," and the Manual's use of the term "unreasonable" to mean something more than just that all other forms of transportation are contraindicated effectively place an extra requirement on ambulance providers, because the statute requires only that the ambulance services be "medically required," 42 U.S.C. Sec. 1395n(a)(2), and that all other forms of service merely be "contraindicated," 42 U.S.C. Sec. 1395x(s)(7).
 
 
 25
 AASI contends that the conclusive contraindication criterion, particularly when the responsibility for finding it is vested in a Hearing Officer, adds a requirement not already present in 42 U.S.C. Secs. 1395n(a)(2), 1395x(s)(7) and 42 C.F.R. Sec. 410.40(b) and (b)(1). That requirement, according to AASI, constitutes a substantive rule which cannot be valid because it was never subjected to notice and comment rulemaking. See 5 U.S.C. Sec. 553 (1982). See also 2 K. Davis, Administrative Law Treatise Sec. 7:8 (2d ed. 1979). Moreover, because the rule is an integral part of the way in which the Secretary analyzes Part B claims, if the rule is invalid, so is the Secretary's methodology. Thus, AASI maintains, a challenge to the rule is a challenge to methodology, and federal courts have jurisdiction to hear this claim under the standards of Michigan Academy.
 
 
 26
 Citing Kuritzky v. Blue Shield of Western New York, Inc., 850 F.2d 126 (2d Cir.1988) (per curiam), cert. denied, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989), the Secretary responds that "jurisdiction is lacking [because] ... the claim is merely that the insurance carrier misapplied or misinterpreted valid rules and regulations." Id. at 128. In support, the Secretary points out that the Hearing Officer was not obliged to deny benefits under Letter 10-80. Upon review, she could have found that all other forms of transportation were conclusively contraindicated, in which case Letter 10-80 would not have stood in the way of that determination.
 
 
 27
 We believe that this argument glosses over AASI's challenge. It is true that the Hearing Officer in this case, in "applying the regulations," could have come out the other way. But, in coming out the other way, she still would have been making a determination regarding "conclusive contraindication," and requiring her to make that determination, as Letter 10-80 does, implicates jurisdiction because AASI has raised a question as to whether the conclusive contraindication requirement is consistent with the statute. "[F]ederal jurisdiction exists where there is a challenge to the validity of an agency rule or regulation." Kuritzky, 850 F.2d at 128. Jurisdiction does not depend upon whether the rule as applied in a particular case renders an invalid result, but rather whether the rule imposes assertedly invalid criteria for the Hearing Officer's determinations. It is the criteria that AASI challenges, and those criteria are part of the method used by the Secretary in administering claims. Thus, AASI's challenge to the criteria is a challenge to the Secretary's method.
 
 
 28
 The Secretary makes a second argument which, although primarily addressed to the merits, is advanced in a way that has jurisdictional overtones; hence, we address it here. The Secretary submits that the Carrier Manual provision and Letter 10-80 are interpretive, not substantive rules. "Interpretive rules are those which merely clarify or explain existing law or regulations." Powderly v. Schweiker, 704 F.2d 1092, 1098 (9th Cir.1983). "They express the agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities," and they are owed no deference by a reviewing court. Batterton v. Marshall, 648 F.2d 694, 702 (D.C.Cir.1980). By contrast, substantive rules "grant rights, impose obligations, or produce other significant effects on private interests," id. at 701-02, and can only be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. Sec. 706(2)(A).
 
 
 29
 We are not persuaded by the Secretary's intimation that the distinction between substantive and interpretive rules determines the line between Michigan Academy and Erika.[6] Presumably, the Secretary would agree that under Erika, the district court has no jurisdiction to determine whether a substantive rule was correctly applied in a particular case. Conversely, however, we think that under Michigan Academy, the district court has jurisdiction to determine the validity of a rule itself, even an interpretive rule. Thus, whether or not there is a "rule" that doctor certification of medical necessity is sufficient, we have jurisdiction to review the Carrier Manual provisions and HCFA Letters.
 
 
 30
 If the district court determines that the provisions substantively deviate from the statute's norm, then they are necessarily invalid because they were not drafted pursuant to notice and comment rulemaking procedures.[7] See 5 U.S.C. Sec. 553; General Elec. Co. v. Gilbert, 429 U.S. 125, 141, 97 S.Ct. 401, 410-11, 50 L.Ed.2d 343 (1976); Linoz v. Heckler, 800 F.2d 871 (9th Cir.1986).[8] On the other hand, if the district court determines that the provisions are interpretive, although they would not necessarily be invalid, the district court would then have to do its own evaluation of whether the provisions accurately reflect Congress's intention when drafting the statute.[9] Interpretive rules are entitled to "no more weight on judicial review than their inherent persuasiveness commands." Batterton v. Marshall, 648 F.2d 694, 702 (D.C.Cir.1980). In either case, however, the district court has jurisdiction under Michigan Academy because, in either case, the challenge is to the rule itself and to the methods the Secretary uses, not to the rule's application in a particular case.
 
 IV. WAIVER OF RECOUPMENT
 
 31
 The second part of AASI's claim rests on the theory that, even if the Carrier Manual and Letter 10-80 constitute a legitimate reading of the statute, and ambulance services can be denied unless the entire record indicates to the carrier's satisfaction that other forms of transportation were conclusively contraindicated, AASI is entitled to a waiver of liability for recoupment of their overpayment. 42 U.S.C. Sec. 1395pp(a)(1) states that if a carrier denies payment because the carrier determines that the services were unnecessary, the provider should nonetheless be paid if the provider did not know and had no reason to know that the payment would be denied. The exact wording of the statute provides that where:
 
 
 32
 (1) a determination is made that, by reason of section 1395y(a)(1) or (9) of this title ... payment may not be made under Part A or Part B of this subchapter ... and
 
 
 33
 (2) both such individual and such provider of services ... did not know, and could not reasonably have been expected to know, that payment would not be made for such items ... then to the extent permitted by this subchapter, payment shall, notwithstanding such determination, be made for such items or services.... 42 U.S.C. Sec. 1395pp.
 
 
 34
 42 U.S.C. Sec. 1395y(a)(1), cited in Sec. 1395pp, states:
 
 
 35
 [N]o payment may be made ... for any expenses incurred for items or services ... which ... are not reasonable and necessary for the diagnosis of or treatment of illness ... (emphasis added).
 
 
 36
 Thus, if a carrier denies coverage because the services were not reasonable and necessary under Sec. 1395y(a)(1), but the provider could not reasonably have expected that denial, provider liability for recoupment is waived. Although AASI was originally reimbursed for its services, as a result of the Hearing Officer's decision, it is currently liable for recoupment, and it maintains that Sec. 1395 entitled it to a waiver of that liability. It contends that based on the doctor certification that it had, it reasonably expected the payment to be made. Moreover, AASI argues that Blue Shield's original approval of the claim and actual reimbursement of AASI before deciding to ask for its money back further indicate that AASI's expectation of payment was reasonable.
 
 
 37
 The problem with this position, the Secretary argues, is that the Hearing Officer did not deny the payment because it was unreasonable and unnecessary under Sec. 1395y(a)(1); she denied it because other methods of transportation were not "contraindicated" under 42 U.S.C. Sec. 1395x(s)(7). The Secretary explains that when payment is denied under a provision other than Sec. 1395y(a)(1), Sec. 7300.2.C of the Carrier Manual instructs Hearing Officers to deny the Sec. 1395pp waiver. Specifically, the Carrier Manual states that "[t]he waiver of liability provision does not apply to denials for medically unreasonable or unnecessary items or services which are denied because another section [i.e., other than Sec. 1395y(a)(1) of the United States Code][10] is applicable." Section 1395x(s)-x(s)(7) states:
 
 
 38
 "Medical and other services" [which are normally covered pursuant to Sec. 1395k(2)(B) ] means ... ambulance service where the use of other methods of transportation is contraindicated by the individuals's condition, but only to the extent provided in the regulations ... (emphasis added).
 
 
 39
 AASI acknowledges that the Hearing Officer denied payment based on Sec. x(s)(7), not Sec. y(a)(1). The dispute, according to AASI, is not whether this Hearing Officer applied Sec. x(s)(7) in this case, but whether Hearing Officers always apply Sec. x(s)(7) instead of Sec. y(a)(1). AASI maintains that whenever ambulance services are deniable as not "reasonable and necessary" under Sec. y(a)(1), they are also deniable because all other methods of transportation are not "contraindicated" under Sec. x(s)(7). Thus, according to AASI, Sec. x(s)(7) is just a more specific elaboration of the requirement in Sec. y(a)(1): ambulance services are "not reasonable and necessary" under Sec. y(a)(1) whenever "other methods of transportation" are not "contraindicated" under Sec. x(s)(7). AASI asserts that because Carrier Manual Sec. 7300.2.C instructs the Hearing Officer to deny waiver if services are deniable under a provision other than Sec. y(a)(1), the Hearing Officer is always required to consider whether another provision besides Sec. y(a)(1) is applicable before denying payment under Sec. y(a)(1). Hence, it concludes, Sec. x(s)(7) will always be applied, and ambulance service providers will always be denied waiver.
 
 
 40
 AASI's jurisdictional argument is built on the foregoing analysis. The argument is that if the Carrier Manual requires that Hearing Officers deny waiver to ambulance service providers, it arbitarily excludes ambulance service providers from the statutory waiver provision. AASI challenges the Secretary's ability to initiate and implement that exclusion (at least without notice and comment rulemaking procedures). That, in our view, is a challenge to the rule in the Carrier Manual itself, not the rule's application in this particular case.
 
 
 41
 The Secretary's response, once again, goes to the merits of AASI's argument. The Secretary asserts that AASI's construction of the statute confuses the differences between Sec. x(s)(7) and Sec. y(a)(1) and that, no matter how strenuously AASI asserts to the contrary, one cannot escape the fact that the Hearing Officer based her decision on Sec. x(s)(7), not Sec. y(a)(1).[11] In essence, the Secretary argues that Sec. x(s)(7) and Sec. y(a)(1) are not coextensive and that because the denial in this case was based on Sec. x(s)(7), waiver is inappropriate.
 
 
 42
 The Secretary may be right: Sec. x(s)(7) and Sec. y(a)(1) may not be identical. However, that question cannot be decided by a court unless that court has jurisdiction. It is true that the district court's jurisdiction depends on whether AASI challenges a rule and the merits of AASI's challenge to the rule depends upon the plausibility of its assertion that Sec. x(s)(7) and Sec. y(a)(1) are coextensive. If the statutes are not coextensive, and if cases exist in which payment could be denied under Sec. y(a)(1) even though payment would be allowed under Sec. x(s)(7), then AASI's claim is meritless. In those cases, the Carrier Manual could not require the Hearing Officer to deny the waiver because if the denial was made pursuant to Sec. y(a)(1), and not Sec. x(s)(7), a provision other than Sec. y(a)(1) would not apply and the Carrier Manual instructions would be inapplicable. In other words, the rule in the Carrier Manual would not effectively deny waiver to ambulance service providers in all cases.
 
 
 43
 However, we do not regard AASI's assertion that the two statutes are functionally identical and that the Carrier Manual therefore operates always to deny ambulance service providers the benefits of the waiver as so facially baseless as to warrant dismissal. If one accepts the plausibility of the assertion that the two statutes are functionally identical, AASI's challenge can only be seen as a challenge to the Carrier Manual itself, not its application.
 
 
 44
 In sum, the issue is not whether the Hearing Officer's determination was "reasonable," cf. Association of Seat Lift Manufacturers v. Bowen, 858 F.2d 308, 315 (6th Cir.1988) cert. denied, --- U.S. ----, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989); nor is the question one pertaining to the bias or incompetency of the Hearing Officer, cf. United States v. Bushman, 862 F.2d 1327, 1329 (8th Cir.1988) cert. denied, --- U.S. ----, 110 S.Ct. 53, 107 L.Ed.2d 21 (1989). AASI does not question the Hearing Officer's authority, under the regulations, to do what she did; it questions the regulations that governed her decision. Even if she had wanted to, the Hearing Officer could not have found that denial of coverage for ambulance services in this case was based on both Sec. 1395y(a)(1) as well as Sec. 1395x(s)(7); in doing so, she would have violated Sec. 7300.2.C, which seems to prevent application of the waiver if coverage is deniable under a section other than Sec. y(a)(1). AASI challenges Sec. 7300.2.C. That is a challenge to the means by which the Hearing Officer makes her determinations. Hence, the district court had jurisdiction.
 
 
 45
 The Secretary asserts, in terrorem, that a finding of jurisdiction in this case will allow any aggrieved party to seek review in federal court of any unfavorable Hearing Officer determination simply by claiming that the Carrier's Manual Provision on which any Hearing Officer relies violates the APA's notice and comment requirements. We fail to see how such a finding will open the floodgates. Unless the statute can be construed in such a way as to make a Carrier Manual provision appear to deviate from the statute, aggrieved parties will not be free to flood the federal courts. Those parties will not have colorable claims, and frivolous challenges can be expeditiously disposed of, under Fed.R.Civ.P. 12(b)(6), if not 12(b)(1).
 
 V. CONCLUSION
 
 46
 Because AASI has presented colorable challenges to the method by which the Medicare Part B reimbursement decisions for ambulance service providers are made, we will reverse the district court's dismissal for lack of jurisdiction. We express no opinion on the merits of the underlying claims. Those issues must be fully briefed and argued in the first instance before the district court.
 
 
 
 *
 The Honorable John C. Lifland, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 We were informed at oral argument that AASI had filed a proceeding under Chapter II of the Bankruptcy Act. We therefore held the appeal in abeyance until the automatic stay was released by the Bankruptcy Court
 
 
 [2]
 We note that the statute has now been amended so that all Part B determinations are reviewable. See 42 U.S.C.A. Sec. 1395ff(b)(1)(C) (Supp.1990)
 
 
 [3]
 To simplify, we will refer to the amount of money that Blue Shield originally paid to AASI as an overpayment. We recognize that AASI claims, in its first argument, that the money should not be considered an overpayment at all and that AASI has been entitled to it all along
 
 
 [4]
 Only people who are insured under Social Security Disability or Social Security Old Age Benefits programs may participate in Medicare. Eligibility does not depend on financial need. Part A covers basic institutional health costs and is provided, automatically, to all Social Security Trust Fund recipients. Part B is voluntary, requires the recipient to pay additional premiums, and covers additional health-related costs
 
 
 [5]
 In Medical Fund, plaintiff/appellant claimed that criteria for certifying a skilled nursing facility were the same for Medicare and Medicaid. 804 F.2d at 36. The court held that 28 U.S.C. Sec. 1331 gave jurisdiction to the district court over the plaintiff's claims because plaintiff's allegation, which challenged the lawfulness of an explicit HFCA policy in the Medicare Carrier's Manual either on its face or as applied to the case then at bar, lay outside the jurisdiction of the hearing officer, since it is not within authority of hearing officers to pass upon the legality of policies established by the Secretary or the HFCA. Id. at 39
 
 
 [6]
 Federal courts have jurisdiction to determine whether any given rule is interpretive or substantive. See, e.g., Powderly, 704 F.2d at 1098; Batterton, 648 F.2d at 702. That jurisdiction stems from the Administrative Procedure Act's judicial review provision, 5 U.S.C. Sec. 706. Ultimately, it is the court's duty to interpret whether any given agency is complying with the APA
 
 
 [7]
 The district court seemed to find that the Carrier Manual Provisions were interpretive, not substantive rules. Ultimately, this finding may be vindicated. However, that is a question for a court to decide, and in order to decide it that court must have jurisdiction. Because the district court dismissed for lack of subject matter jurisdiction, it may not, on remand, treat its determination on this issue as law of the case
 
 
 [8]
 In Linoz, the Ninth Circuit struck down a provision in the Medicare Part B Carrier's Manual which excluded ambulance service payment when, instead of being taken to the nearest hospital, patients were taken to a hospital in which a physician practiced a specific specialty. The Carrier Manual Provision stated that transportation to a hospital "solely to avail a patient of the service of ... a physician in a specific specialty," Carrier Manual Sec. 2120.3F, did not qualify as transportation "to the nearest institution with appropriate facilities" within the meaning of the regulation, 20 C.F.R. Sec. 405.232(i). 800 F.2d at 876. Thus, ambulance companies that took patients to the nearest hospital that had a specialist capable of caring for the patients' special needs (which was not necessarily the nearest hospital without such a specialist) were not reimbursed. The carrier never paid for an ambulance trip to any hospital other than the absolutely nearest one, and patients who needed a specialist's care went uncovered. Section 2120.3F effectively prevented Hearing Officers from ever finding that transportation to a distant hospital--but one with a needed specialist--was "appropriate" within the meaning of the substantive regulation
 The court found that the Manual went too far, in essence concluding that the Carrier Manual's interpretation of the word "appropriate" was so inconsistent with the plain meaning of the word as to render the Carrier Manual provision substantive, not interpretive. "[I]nstead of simply clarifying a pre-existing regulation, [that transportation to a hospital with appropriate facilities was covered], section 2120.3F carved out a per se exception to the rule that [coverage extended to] ambulance service 'to the nearest institution with appropriate facilities.' " Id. at 877.
 
 
 [9]
 In support of the argument that Carrier Manual Provisions in the present case are interpretive, not substantive, both the Secretary and the district court invoked prior decisions holding that Provider Reimbursement Manual provisions, which govern Part A reimbursement determinations, are interpretive not substantive. See Creighton Omaha Regional Health Care Corp. v. Bowen, 822 F.2d 785, 791 (8th Cir.1987); St. Mary's Hosp. v. Blue Cross & Blue Shield Ass'n, 788 F.2d 888, 890-91 (2d Cir.1986). We do not find these cases persuasive, however, in light of the fact that in Linoz, the Ninth Circuit held that a provision of the same Part B Carrier's Manual at issue in this case was substantive, not interpretive. See 800 F.2d at 877
 
 
 [10]
 The Carrier Manual refers to Sec. 1862, which represents the Medicare statute's own section enumeration. Section 1862 of the Medicare statute is codified at 42 U.S.C. Sec. 1395y(a)(1). Unless otherwise noted the "sections" discussed in this opinion refer to the United States Code, not the Medicare statute
 
 
 [11]
 The Secretary also points out that AASI did not mention Sec. 7300.2.C in its complaint. To the extent the Secretary is asking us to find that AASI has waived this issue, we decline to do so. AASI's complaint, pps 82-95, lays out exactly what Sec. 7300.2.C requires the Hearing Officers to do, even though it does not specifically mention that Sec. 7300.2.C instructs them to do it. The essence of the issue was raised in the district court. If the sole problem with the complaint is that AASI did not invoke the precise provision of the Carrier's Manual, the proper course would have been for the district court to grant leave to amend, not dismiss for lack of subject matter jurisdiction